UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



TAMMY R.,

    Plaintiff,

v.

20-CV-796 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## DECISION AND ORDER

Plaintiff Tammy R.[1] brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's determination that she was not disabled. Dkt. 1. After reviewing the administrative record and carefully considering the parties' arguments, the Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion for judgment on the pleadings.

## PROCEDURAL HISTORY

On April 1, 2015, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), claiming she had been disabled since

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

August 3, 2013. Tr. 15.[2] After her application was denied, *id.* at 95, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on June 13, 2017, *id.* at 33. The ALJ issued a decision on August 29, 2017, finding that Plaintiff was not disabled. *Id.* at 26. Plaintiff appealed the ALJ's decision, but on July 27, 2018, the Appeals Council denied her request for review, finalizing the Commissioner's decision. *Id.* at 1.

Following the Appeals Council's denial, Plaintiff filed a civil action against the Commissioner in the Western District of New York, seeking review of the ALJ's decision. *Id.* at 1312-15. On July 3, 2019, upon mutual agreement by the parties, the Court reversed the Commissioner's decision and remanded the case for further administrative proceedings. *Id.* at 1310-11.

On remand, the Appeals Council directed the ALJ to address an issue regarding his determination that Plaintiff could perform other work in the national economy. *Id.* at 1306. On February 11, 2020, Plaintiff testified at a second hearing before the same ALJ. *Id.* at 1267. Again, the ALJ found that Plaintiff was not disabled, issuing his decision on March 4, 2020. *Id.* at 1258.

Having exhausted her administrative remedies, Plaintiff commenced the action currently before the Court. Dkt. 1. Both parties moved for judgment on the pleadings. Dkts. 14, 16, 17.

---

[2] The administrative record of proceedings before the Social Security Administration was split into two parts, Dkts. 11 and 12. References to the administrative record are denoted "Tr. __." The provided page numbers correspond to the pagination located in the lower right corner of each page of the record.

2

# LEGAL STANDARDS

## I.  District Court Review

"The scope of review of a disability determination . . . involves two levels of inquiry. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right

to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. <u>Disability Determination</u>

In denying Plaintiff's application, the ALJ evaluated Plaintiff's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.*

But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (d)-(e);

416.920(a)(4)(iv), (d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1545, 416.945.

After determining the claimant's RFC, the ALJ proceeds to step four. *Id.* §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. *Id.* §§ 404.1520(f), 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for SSI and DIB under the process detailed above. At step one, the ALJ found that Plaintiff had not engaged in

"substantial gainful activity" since the alleged onset date of August 3, 2013. Tr. 1248.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the right shoulder, carpal tunnel syndrome, depression, and anxiety. *Id.* The ALJ also considered Plaintiff's other impairments but determined that the following were non-severe: diabetes mellitus, hypertension, asthma, obstructive sleep apnea, obesity, bilateral knee osteoarthritis, and obsessive-compulsive disorder. *Id.*

At step three, the ALJ found that the Plaintiff's impairments, alone or in combination, did not meet or medically equal any of the impairments listed in the regulations. *Id.* at 1249.

At step four, the ALJ determined that Plaintiff had the RFC to perform light work with the following additional limitations:

> [Plaintiff] would be prohibited from climbing ladders, ropes, or scaffoldings; further limited to only occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, or crawling; would be limited to frequent reaching with the right upper extremity, the right upper extremity being dominant, but no overhead reaching with the same upper extremity (right); frequent handling and fingering bilaterally; would need to avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, poorly ventilated areas; need to avoid all exposure to slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames; would be limited to doing simple, routine, and repetitive tasks, working in a low-stress job, which would be defined as being free of fast-paced production requirements, with no hazardous conditions; only occasional decision making required; only occasional changes in work setting; could have only occasional interaction with coworkers and supervisors, but no tandem tasks; and no direct interaction with the general public.

*Id.* at 1251. Completing step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. *Id.* at 1257.

At step five, relying on the testimony of a vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id.* These potential occupations included a fastener, marker, and bander. *Id.* at 1258. Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, from the alleged onset date through the date of the decision. *Id.*

## II. <u>Analysis</u>

Plaintiff raises two issues on appeal. First, she argues that the ALJ failed to properly evaluate and account for her bilateral knee osteoarthritis. Dkt. 14-1, at 1. Second, she claims that the RFC determination is a product of the ALJ's lay judgment, lacking substantial evidentiary support. *Id.* Specifically, Plaintiff suggests that consultative examiner Dr. Donna Miller's 2015 opinion is stale. *Id.* at 26. In response, the Commissioner asserts that the ALJ correctly determined that Plaintiff's knee impairment was non-severe. Dkt. 16-1, at 7. Further, the Commissioner argues that substantial evidence supports the RFC determination. *Id.* at 10.

For the reasons discussed below, the Court concludes that the ALJ properly evaluated and accounted for Plaintiff's knee impairments and that substantial evidence supports the RFC determination. Therefore, the decision of the Commissioner is affirmed.

### A. The ALJ Properly Determined That Plaintiff's Knee Impairment Was Non-Severe.

The ALJ determined that Plaintiff's bilateral knee osteoarthritis was non-severe, noting that recent records indicated Plaintiff ambulated with a normal gait and displayed full strength in her lower extremities. Tr. 1249. Plaintiff argues that the ALJ's determination was in error and that the RFC fails to account properly for her knee impairment. Dkt. 14-1, at 21. The Court disagrees.

At step two of the evaluation process, the ALJ gauges the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." *Id.* § 404.1520(c). An impairment that "would have no more than a minimal effect on an individual's ability to work" is "not severe." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). When the record contains conflicting medical evidence, it is "within the province of the ALJ to resolve" those conflicts. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

An ALJ's error in evaluating the severity of an impairment is harmless when the ALJ considers the impairment in subsequent steps. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *see* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your [RFC]."). If the ALJ fails to account for the claimant's non-severe impairments in

the RFC determination, remand is required. *Zochios v. Berryhill*, No. 17-CV-6207-FPG, 2018 WL 1835451, at *3 (W.D.N.Y. Apr. 18, 2018).

Here, substantial evidence supports the ALJ's determination that the objective record did not establish the "intense, persistent, and limiting effects [of Plaintiff's knee impairment] to the extent alleged." Tr. 1254. The record indicates "only intermittent gait limitations," *id.* at 1256, resulting from recent accidents rather than Plaintiff's bilateral knee osteoarthritis, *see id.* at 983 (slipping on ice); *id.* at 1026 (falling on stairs); *id.* at 1798 (falling while walking her dog). Moreover, Plaintiff's condition improved following her injuries, with her doctor noting that Plaintiff was able to ambulate with a non-antalgic gait and without the use of a cane. *Id.* at 1800. The doctor advised Plaintiff that weight loss and exercise would improve her symptoms, specifically recommending that she begins biking or swimming. *Id.* at 1801. Given this evidence, the ALJ could reasonably conclude that Plaintiff's knee impairment would only minimally affect her ability to work.

The Court notes that even if the ALJ had erroneously evaluated the severity of Plaintiff's impairment at step two, the error would have been harmless. The ALJ's decision indicates that both severe and non-severe impairments factored into the RFC determination, explicitly explaining that the restriction to light work with postural modifications accommodated Plaintiff's bilateral knee osteoarthritis. *Id.* at 1256. Because no other impairments identified at step two would affect Plaintiff's mobility, *see id.* at 1248-49, the limitations on Plaintiff's balancing, stooping,

kneeling, crouching, and crawling directly addressed her knee impairment.
Therefore, Plaintiff cannot justify remand on this basis.

### B. Substantial Evidence Supports the ALJ's RFC Determination.

After considering the record in its entirety, the ALJ properly determined that Plaintiff had the RFC to perform light work with several additional limitations. *Id.* at 1251. Plaintiff contends that the ALJ's determination lacks substantial evidentiary support and instead reflects the ALJ's own interpretation of "bare examination findings." Dkt. 14-1, at 24. In support of this theory, Plaintiff argues that Dr. Miller's 2015 opinion detailing Plaintiff's physical functioning is stale. *Id.* at 26.

A stale medical opinion "does not constitute substantial evidence to support an ALJ's findings." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172-FPG, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (citing *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016)). The age of an opinion alone does not render it stale; rather, an opinion may be stale when the record indicates a subsequent deterioration of the claimant's condition. *Clark v. Comm'r of Soc. Sec.*, No. 18-CV-0509-MJR, 2019 WL 3886723, at *3 (W.D.N.Y. Aug. 19, 2019); *see also Beaman v. Comm'r of Soc. Sec.*, No. 18-CV-1344, 2020 WL 473618, at *4 (W.D.N.Y. Jan. 28, 2020) (recognizing that a "more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age").

In contrast, an improvement in the claimant's condition does not render an earlier opinion stale. *See, e.g., Clark*, 2019 WL 3886723, at *4 (determining that the consultative examiner's opinion was not stale when plaintiff's condition improved after surgery); *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6-7 (W.D.N.Y. May 12, 2017) (finding the consultative examiner's opinion was not stale, even after plaintiff's subsequent fall and injury, when plaintiff's condition showed improvement).

As evidence of her deteriorating condition, Plaintiff points to her carpal tunnel surgeries, trigger fingers, and knee pain. Dkt. 14-1, at 26; Dkt. 17, at 2. The record suggests, however, that Plaintiff's condition has generally improved. Postoperative examination notes indicate that Plaintiff's preoperative carpal tunnel symptoms had "mostly resolved." Tr. 1013, 1034. Plaintiff responded well to cortisone injections in her hands, which reduced her finger pain. *Id.* at 1440. Following her series of falls, Plaintiff was able to ambulate with a non-antalgic gait and without the use of an assistive device. *Id.* at 1800. Although the record chronicles Plaintiff's ongoing hand and knee issues, the Court does not find sufficient evidence that Plaintiff's condition has deteriorated in the period following Dr. Miller's examination. As such, Dr. Miller's opinion detailing Plaintiff's physical functioning is not stale.

Plaintiff correctly asserts that "an ALJ is not a medical professional, and 'is not qualified to assess a claimant's RFC on the basis of bare medical findings.'" *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 411, 416 (W.D.N.Y. 2019) (quoting

*Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). But it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2). The ALJ must consider all the relevant evidence contained in the record when making the RFC determination. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). An ALJ's reliance on medical notes and opinions contained in the record does not constitute a lay interpretation of raw medical data. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020). There is no requirement that the RFC exactly match any individual medical opinion, *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and it is not an error to deviate from a consultative examiner's recommendations to decrease a claimant's RFC based on other evidence in the record, *see Ramsey*, 830 F. App'x at 39.

"[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history," an ALJ can determine a claimant's RFC without relying on lay speculation. *See Clark*, 2019 WL 3886723, at *6 (quoting *Rosa*, 168 F.3d at 79 n.5). Furthermore, when the record is complete, "the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5; *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is adequate . . . .") (internal quotation marks and citation omitted).

Plaintiff argues that the ALJ's RFC determination was a mere "guesstimate." Dkt. 14-1, at 27; Dkt. 17, at 4. But the ALJ relied on a record containing over 1,300

pages of treatment records, examination reports, and progress notes spanning from August 2013 to January 2020. *See* Dkt. 11; Dkt. 12. It was appropriate for the ALJ to weigh and resolve any conflicting evidence in the record when determining Plaintiff's RFC. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (recognizing that "it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record").

The ALJ noted that neither the record as a whole nor Dr. Miller's examining opinion corroborated the alleged severity of Plaintiff's physical impairments. Tr. 1253. After flagging several inconsistencies in the record, *id.* at 1252-54, the ALJ detailed the weight he gave various examining opinions and explained how he incorporated Plaintiff's impairments into the RFC determination, *id.* at 1255-56.

For example, in a report detailing Plaintiff's physical functioning, consultative examiner Dr. Miller noted that Plaintiff maintained full range of motion of her shoulders, cervical spine, elbows, forearms, wrists, and ankles, with no signs of edema or muscular atrophy. *Id.* at 676-77. Plaintiff had no difficulties rising from her chair, changing for the exam, or getting on and off the exam table. *Id.* at 676. Although the doctor diagnosed Plaintiff with diabetes, asthma, hypothyroidism, sleep apnea, vertigo, mild degenerative joint disease, and obesity, she determined that Plaintiff's prognosis was stable. *Id.* at 677. Dr. Miller recommended that Plaintiff avoid irritants that could exacerbate her asthma but made no additional recommendations limiting her physical capabilities. *Id.*

Relying on Dr. Miller's opinion and the record as a whole, the ALJ adopted the examiner's recommendation but further decreased Plaintiff's RFC to accommodate her alleged difficulties. *Id.* at 1256. Where, as here, the RFC assessment is more restrictive than the medical opinions of record, there is generally no basis for remand. *See, e.g., Threatt v. Comm'r of Soc. Sec.*, No. 19-CV-25, 2020 WL 4390695, at *5 (W.D.N.Y. Jul. 31, 2020); *Baker o/b/o Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *3 (W.D.N.Y. Mar. 6, 2018); *Castle v. Colvin*, No. 15-CV-113, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017).

The Court concludes that substantial evidence in the record supports the RFC determination, including the additional restrictions incorporated by the ALJ. The RFC is therefore not a product of lay speculation. The ALJ explained the basis for his determination and accounted for each of Plaintiff's severe and non-severe impairments. Because there are no obvious gaps in the record, the ALJ was under no obligation to expand it.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings, (Dkt. 14), is **DENIED**, and the Commissioner's cross-motion for judgment on the pleadings, (Dkt. 16), is **GRANTED**. The decision of the Commissioner is **AFFIRMED**.

SO ORDERED.

Dated: July 9, 2021
Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE